IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GERALD S. SCHAFER,            )
Chapter 7 Trustee,            )
                              )
            Plaintiff,        )
                              )
v.                            )        1:12cv289
                              )
NEXTIRAONE FEDERAL, LLC d/b/a )
BLACK BOX NETWORK SERVICES,   )    (Bank. Case No. B-10-10002C-7G)
                              )    (Adversary Proc. No. 11-02076)
            Defendant.        )
                              )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This action, filed as an adversary proceeding in the bankruptcy court, is before this court on the motion of Defendant Nextiraone Federal, LLC d/b/a Black Box Network Services ("BBNS") to withdraw the reference under 28 U.S.C. § 157(d). (Doc. 2.) Plaintiff Gerald S. Schafer, Chapter 7 Trustee (the "Trustee"), opposes the motion as being premature on the grounds that, even assuming the bankruptcy court lacks jurisdiction to enter final rulings, it may still conduct pretrial proceedings and make recommendations. (Doc. 3.) For the reasons set forth below, the motion will be denied.

## I.  BACKGROUND

The following facts are alleged in the Trustee's complaint and are taken as true for purposes of the present motion.

BBNS engineers and installs data networks infrastructure. On October 23, 2007, it entered into a Subcontractor Agreement with Premise Networks, Inc. (the "Debtor"), to provide certain services in connection with a project for the United States Department of Defense at Fort Bragg, North Carolina, on which BBNS was bidding. BBNS and the Debtor also entered into a "teaming agreement" to improve BBNS's chance of being selected as the prime contractor on the government project. In February 2008, BBNS was awarded the federal contract.

In March 2008, BBNS and the Debtor executed an amendment to the Subcontractor Agreement to set the pricing, payment schedule, and statement of work to be performed by the Debtor, and the Debtor procured a $1,000,000 performance bond (the "subcontract"). The terms of the subcontract were revised in June 2008. On January 27, 2009, however, BBNS terminated the subcontract and suspended the Debtor's work.

On January 2, 2010, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the Middle District of North Carolina. Pursuant to 28 U.S.C. § 157(a) and Local Rule 83.11, the matter was referred to the bankruptcy court in this district. After the Trustee was appointed, he filed this adversary proceeding against BBNS in the bankruptcy court, allegedly as a "core" proceeding – that is, the type in which the bankruptcy court has authority to enter a judgment on

2

the merits as opposed to simply making recommended findings to the district court. The Trustee seeks to recover over $3,000,000 under four state law theories of recovery: breach of contract; unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 et seq.; quantum meruit; and unjust enrichment. BBNS responded with the current motion to withdraw the reference of the adversary proceeding to the bankruptcy court and to have the case litigated in this court.

## II. ANALYSIS

BBNS raises three primary arguments for withdrawal of the reference.[1] First, it contends that this court must withdraw the reference to the bankruptcy court under the requirements of 28 U.S.C. § 157(d), because the adversary proceeding involves consideration of both Title 11 and laws of the United States regulating organizations or activities affecting interstate commerce. Second, it contends that the bankruptcy court lacks constitutional authority to consider the action after Stern v. Marshall, -- U.S. --, 131 S. Ct. 2594 (2011). Third, it argues that even if the action is deemed to be a non-core proceeding, BBNS never submitted to the jurisdiction of the bankruptcy court

---

[1]    In the bankruptcy court, BBNS also filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), contending that the bankruptcy court lacked subject matter jurisdiction (Doc. 4-9), and supported it with the same brief that supports its motion to withdraw the reference. BBNS represents that its Rule 12(b)(1) motion is not before the district court (Doc. 4-12 at 2), so the court does not address it.

by filing a proof of claim and intends to invoke its Seventh Amendment right to a trial by jury, which only an Article III court can entertain absent consent of the parties. The Trustee does not address BBNS's first or third arguments. Rather, he argues only that the motion to withdraw reference is premature because, under the bankruptcy court's "related to" authority under 28 U.S.C. § 157(c)(1), it maintains the power to hear all pretrial matters and make recommendations to the district court on any dispositive pre-trial motions. Each argument will be addressed in turn.

### A. Mandatory Withdrawal of Reference under 28 U.S.C. § 157(d)

Section 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). While the statute authorizes both discretionary and mandatory withdrawal of reference to the district court, BBNS proceeds under only its mandatory withdrawal provision. As the moving party, it bears the burden of demonstrating the requirements triggering withdrawal. E.g.,

*Vieira v. AGM, II, LLC*, 366 B.R. 532, 535 (D.S.C. 2007); *In re U.S. Airways Grp., Inc.*, 296 B.R. 673, 677 (E.D. Va. 2003).

BBNS contends that withdrawal is mandatory because litigation of the parties' construction subcontract in the adversary proceeding "will require application of federal regulations, and the interpretation of federal contract clauses implemented by those regulations, relating to the performance of [Department of Defense] prime contracts and subcontracts." (Doc. 4-10 at 5.) BBNS relies heavily on *Contemporary Lithographers, Inc. v. Hibbert* (*In re Contemporary Lithographers, Inc.*), 127 B.R. 122, 127-28 (M.D.N.C. 1991), where the court stated that withdrawal applies when a Title 11 proceeding "presents a non-Title 11 federal question which will affect the outcome of the proceeding." The court stated that it "does not believe that an unclear or complex federal statute is a prerequisite to mandatory withdrawal under section 157(d)," and it rejected any requirement for "significant interpretation" of "vague and uncertain" federal law. *Id.* at 127.[2]

_____

[2] In line with the vast majority of decisions, the court rejected the view that mandatory withdrawal under section 157(d) requires material Title 11 questions, finding that such an approach would frustrate withdrawal in cases in which non-bankruptcy federal law must be considered but bankruptcy law plays little or no role. *In re Contemporary Lithographers*, 127 B.R. at 127-28; *see also Franklin Savings Assoc. v. Office of Thrift Supervision*, 150 B.R. 976, 980-81 (D. Kan. 1993) (noting that a literal approach would be incongruous and frustrate the purpose of section 157(d) with respect to mandatory withdrawal).

Since Contemporary Lithographers, courts have articulated in differing ways their interpretation and application of section 157(d)'s phrases "resolution," "consideration," and "requires." For example, in In re U.S. Airways, 296 B.R. at 677-78, the court noted that there is "broad judicial agreement that the phrase 'requires consideration' cannot be given its broadest possible reading -- as in merely to contemplate or give attention -- for to read the phrase this broadly would trivialize the mandatory withdrawal requirement and limit drastically the bankruptcy court's jurisdiction." The court concluded that the terms "resolution" and "requires consideration" must be read together and that mandatory withdrawal is not warranted unless, at a minimum, the bankruptcy court must *decide* a question under non-bankruptcy federal law in order to *resolve* the proceeding. Id. at 679. In other words, "an issue or question of non-bankruptcy federal law must be essential or material to the disposition of the bankruptcy proceeding." Id.; see also Vieira, 366 B.R. at 536 (following In re U.S. Airways); 1 Howard J. Steinberg Bankruptcy Litigation § 1:75 (updated June 2011) ("It is well-settled that to trigger mandatory withdrawal, the 'consideration' of non Title 11 federal law required for resolution of the proceeding must be 'substantial and material' and not just incidental.'"). Compare Terry v. Sparrow, 328 B.R. 442, 449 (M.D.N.C. 2005) (quoting

6

Contemporary Lithographers and citing In re U.S. Airways, but finding the absence of any non-bankruptcy federal law that is "determinative of any issue" in the bankruptcy proceeding).

While there may be different views for how to apply section 157(d), the court need not sort out here any potential distinction between them because BBNS has failed to demonstrate even that the outcome of the state law claims in the adversary proceeding will be affected by, much less that there will be "substantial and material" or "significant" interpretation of, federal law. BBNS's principal argument rests on its contention that the subcontract and related documents incorporate "almost 100" Federal Acquisition Regulations and Department of Defense supplements to them. (Doc. 4-10 at 6.) Assuming this to be true, BBNS has failed to show how any of these federal regulations will even be relevant to the actual dispute in this case, much less how they would affect the adversary proceeding. The essence of the Trustee's complaint is the allegation that BBNS, on the grounds it became concerned about the Debtor's financial well-being, wrongfully required that BBNS obtain a performance bond, required a re-negotiation of the subcontract terms, solicited away key employees, and then terminated the subcontract. These are quintessential state law claims; not a single federal law is alleged in the complaint to have been violated.

BBNS argues further that the Davis-Bacon Act will "apply" to delivery orders under the subcontract. (Id. at 6.) The Davis-Bacon Act required, and its current version requires, payment of "prevailing wages" on public work products. See 40 U.S.C. § 3141 et seq. Again, however, BBNS has not demonstrated that the law is relevant to the adversary proceeding in any way.

In short, BBNS does not tie non-bankruptcy federal law to the complaint's allegations or causes of action. Consequently, BBNS has failed to carry its burden of demonstrating that mandatory withdrawal is warranted under section 157(d).

## B. Effect of **Stern v. Marshall**

BBNS's second argument is that even if withdrawal is not mandated by section 157(d), the reference must be withdrawn because the bankruptcy court lacks constitutional authority to hear or determine this case following Stern v. Marshall, -- U.S. --, 131 S. Ct. 2594 (2011). BBNS's argument relies on the premise, alleged in the complaint, that the bankruptcy court's jurisdiction arises from the adversary proceeding's status as a core proceeding under the Bankruptcy Code.[3] (Doc. 4-2 ¶ 4.)

---

[3] "Although core proceedings are not statutorily defined, [Title 28] section 157(b)(2) offers a nonexclusive list of such actions. Distilling a principle, one court observed that a core proceeding 'must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment although of necessity there may be a peripheral state law involvement.' A related proceeding, on the other hand, is one in which the outcome 'could conceivably have any impact on the estate being administered in bankruptcy.'" Holland Indus., Inc. v. W.

BBNS argues that not only is the bankruptcy court constitutionally barred from determining this core proceeding under Stern, it lacks statutory authority to even submit findings of fact and conclusions of law to the district court because 28 U.S.C. § 157(c)(1) authorizes such recommendations only in non-core proceedings.

To understand BBNS' contentions, a brief overview of Stern and its aftermath is helpful. Stern involved a dispute over the failure to include Vickie Marshall (a/k/a Anna Nicole Smith) in the will of her deceased wealthy husband, J. Howard Marshall II. Vickie sued Marshall's son in state court, contending that the son tortiously interfered with Marshall's intent to provide for her in Marshall's will. She then filed for bankruptcy protection, and the son filed a proof of claim seeking damages against Vickie's bankruptcy estate for alleged defamation for her public statements inculpating the son in fraud in controlling Marshall's assets. Vickie responded with a counterclaim for tortious interference with her gift she expected in Marshall's will. The bankruptcy court granted Vickie summary judgment on the son's defamation claim and awarded her millions of dollars on her counterclaim. Following

Entm't, Inc., (In re Mountain View Coach Line, Inc.), No. 88 CIV 5385 (JFK), 1989 WL 129479, at *1, (S.D.N.Y. Oct. 27, 1989) (internal citations omitted); see Valley Historic Ltd. P'ship v. Bank of New York, 486 F.3d 831, 835-36 (4th Cir. 2007).

appeals to the district and appellate court, the Supreme Court held that while the bankruptcy court had statutory authority to enter final judgment on Vickie's counterclaim under section 157(b) as a core proceeding,[4] it lacked constitutional authority to do so because determination of the state law claim involved the "prototypical exercise of judicial power" that defines an Article III court. 131 S. Ct. at 2615.

Courts have reached different conclusions regarding whether a bankruptcy court can continue to hear a core proceeding that is unconstitutional after Stern. At one end of the spectrum is the view – argued by BBNS – that section 157 divides the bankruptcy court's authority into those matters that involve core proceedings (over which it has plenary authority to determine cases and enter judgments) and those that are non-core but otherwise "related to" the bankruptcy case (over which it has authority only to make recommended rulings). Under this view, the plain language of section 157(c)(1)[5] does not authorize

---

[4] Pursuant to 28 U.S.C. § 157(b)(2)(C), "counterclaims by the estate against persons filing claims against the estate" are "core proceedings."

[5] Section 157(c)(1) provides:

> A bankruptcy judge may hear a proceeding that is *not a core proceeding but that is otherwise related to a case under title 11*. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and

a bankruptcy court to hear a core but unconstitutional case under its "related to" jurisdiction. See Ortiz v. Aurora Health Care, Inc. (In re Ortiz), 665 F.3d 906, 915 (7th Cir. 2011) (concluding that the court lacked appellate jurisdiction because the bankruptcy court lacked "related to" jurisdiction where the proceeding was core but the bankruptcy court lacked a constitutional basis for deciding it under Stern); Samson v. Blixseth (In re Blixseth), Case No. 09-60452-7, Adv. No. 85-1190, 2011 WL 3274042, at *12 (Bankr. D. Mont. 2011), amended by 463 B.R. 896, 905-07 (Bankr. D. Mont. 2012). BBNS argues that the court must follow this approach because the Trustee's action is a core proceeding, albeit unconstitutional after Stern, and therefore cannot qualify as a non-core proceeding that is nevertheless "related to" the bankruptcy case under section 157(c)(1).

Other courts have concluded that Stern did not eliminate the ability of bankruptcy courts to issue proposed findings and conclusions in core proceedings that have become unconstitutional under Stern. These courts read Stern as having effectively removed such cases from the bankruptcy court's core jurisdiction and relegated them to the category of "related to"

---

after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1) (emphasis added).

proceedings under section 157(c)(1).[6] See, e.g., Burns v. Dennis (In re Southeastern Materials, Inc.), 467 B.R. 337, 359 n.35 (Bankr. M.D.N.C. 2012) (citing cases); McCarthy v. Wells Fargo Bank, N.A., (In re El-Atari), No. 1:11cv1090, 2011 WL 5828013, at *3 (E.D. Va. Nov. 18, 2011) ("Even if a fraudulent conveyance action . . . has lost its vaunted status as a core proceeding, it is clearly 'related to a case under title 11.'"); Field v. Lindell (In re Mortg. Store, Inc.), 464 B.R. 421, 427 (D. Haw. 2011) ("[T]he court has little difficulty in finding that Congress, if faced with the prospect that bankruptcy courts could not enter final judgments on certain 'core' proceedings, would have intended them to fall within 28 U.S.C. § 157(c)(1) granting bankruptcy courts authority to enter findings and recommendations."); Paloian v. Am. Express Co. (In re Canopy Fin., Inc.), 464 B.R. 770, 774 (N.D. Ill. 2011) (noting that Stern "at least implied that the effect of its decision was to 'remove' certain claims from 'core bankruptcy jurisdiction,' and to relegate them to the category of claims that are merely 'related to' bankruptcy proceedings and thus subject to being heard, but not finally decided, by bankruptcy courts.");

---

[6] Some of these cases rely on Stern's limiting language -- in which the Court noted that Marshall's son did not argue that the bankruptcy courts are barred from hearing all counterclaims and making recommended rulings in matters "related to" the bankruptcy proceedings, and emphasized that the question presented was a "'narrow' one" -- as evidence that the Court did not disapprove of the bankruptcy court's ability to continue to hear the case under its "related to" statutory grant. See Stern, 131 S. Ct. at 2620.

*Justmed, Inc. v. Byce* (*In re Byce*), No. 1:11-cv-00378-BLW, 2011 WL 6210938, at *4 (D. Idaho Dec. 14, 2011) ("A majority of district courts considering the issue hold that the bankruptcy courts retain the power to enter proposed findings and recommendations.").

With this background in mind, the court returns to BBNS's argument that *Stern* bars the bankruptcy court from hearing the case because, as alleged by the Trustee in the complaint, the adversary proceeding is a core proceeding under 28 U.S.C. § 157. (Doc. 4-2 ¶ 4.) As clear from the above, however, if the Trustee's adversary proceeding is not a core proceeding, *Stern* does not come into play.[7] The fundamental question here, therefore, is whether the parties are operating on a valid assumption. It is that question to which the court now turns.

### 1. Core Jurisdiction

A bankruptcy court derives its jurisdiction from the district court, which has, with exceptions not relevant here, "original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a), (b); *id.* § 157(a). Congress has divided bankruptcy proceedings into three

---

[7] BBNS has not filed a proof of claim and states that it does not intend to do so. (Doc. 4-10 at 4.) Thus, there is no counterclaim by the estate that would provide core jurisdiction under section 157(b)(2)(C).

categories: (1) those "arising under" Title 11; (2) those "arising in" a Title 11 case; and (3) those "related to" a Title 11 case. Stern, 131 S. Ct. at 2603 (citing 28 U.S.C. § 157(a)). A controversy may also be a "non-core unrelated proceeding." Canal Corp. v. Finnman (In re Johnson), 960 F.2d 396, 399 (4th Cir. 1992). The manner in which a bankruptcy judge may act on a referred matter depends on the type of proceeding involved. "Bankruptcy judges may hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments, subject to review" in these proceedings to the extent of the district court's reference under 28 U.S.C. § 157(a).[8] 28 U.S.C. § 157(b)(1); Stern, 131 S. Ct. at 2603. If the proceeding is not core but is "related to" a case under Title 11, bankruptcy judges may make proposed findings of fact and conclusions of law for review by the district court. 28 U.S.C. § 157(c)(1).

The Bankruptcy Code does not define a core proceeding. Rather, section 157(b)(2) sets forth a non-exclusive list of 16 types of matters that constitute core proceedings.[9] Ordinarily,

_____

[8] A party may appeal final judgments in core proceedings to the district court. 28 U.S.C. § 158(a); Fed. R. Bankr. P. 8013; see Stern, 131 S. Ct. at 2603-04.

[9] Section 157(b)(2) provides:

Core proceedings include, but are not limited to—
(A) matters concerning the administration of the estate;

14

the determination whether a matter is core or not occurs in the bankruptcy court. 28 U.S.C. § 157(b)(3) (providing that the "bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection"). However, a district court may conduct the inquiry when considering whether to withdraw the reference. <u>In re Orion Pictures Corp.</u>, 4 F.3d 1095, 1101 (2d

---

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

Cir. 1993) (assessing core or non-core status under discretionary withdrawal); In re U.S. Airways, 296 B.R. at 681-83 (same). But see, e.g., Official Comm. of Unsecured Creditors v. Blease (In re Envisionet Computer Servs., Inc.), 276 B.R. 7, 11 (D. Me. 2002) (discretionary withdrawal).[10] Thus, the court concludes that it may properly address the question here, especially since BBNS argues for withdrawal and its argument rests on proof of core jurisdiction. For the reasons noted below, it becomes readily apparent that BBNS has not demonstrated that the adversary proceeding is a core proceeding.

First, BBNS has not shown (or even argued) under which provision of section 157(b)(2)'s non-exclusive list of core proceedings this adversary proceeding might fall, and the court can find none that applies here. Nor has BBNS shown how this proceeding is a core proceeding not enumerated in section 157(b)(2). BBNS's briefing refers to section 157(b)(2) generally, section 157(b)(2)(C) with respect to Stern (a subsection which does not apply here as noted above), and to two cases which found a trustee's action to collect "accounts receivable" to be a core proceeding within the meaning of section 157(b)(2)(A) and (O). (Doc. 4-10 at 14-15.) These cases, however, are at odds with the Fourth Circuit's opinion in

---

[10]   In discretionary withdrawal cases, the core/non-core determination is important because that status is a factor considered in the motion. See In re U.S. Airways, 296 B.R. at 681.

16

Humboldt Express, Inc. v. The Wise Co. (In re Apex Express Corp.), 190 F.3d 624, 632 (4th Cir. 1999), which held that a Chapter 11 debtor's "accounts receivable" claims against a stranger to the bankruptcy proceeding grounded in state law and arising pre-petition must be treated as non-core. The court expressed a concern that a contrary result would mean that

> any claim involving a potential money judgment would be considered core, even the precise contract claim at issue in Northern Pipeline [Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982)]. Thus, the rationale [reaching a contrary result] would swallow the rule established by Northern Pipeline. See In re Orion Pictures, 4 F.3d at 1102 (to treat pre-petition contract claims as core proceedings under §§ 157(b)(2)(A) or (O) "creates an exception under Northern Pipeline that would swallow the rule.").

190 F.3d at 632.[11] BBNS fails to show how Stern would apply here, particularly as it has not filed a proof of claim.

Second, BBNS has not attempted to show that the adversary proceeding is core under a scenario not specifically listed in section 157(b)(2). Although BBNS's Rule 12(b)(1) motion is not before the court, its arguments under Stern require the court to consider whether the bankruptcy court can proceed at all. The adversary proceeding is not one "arising under title 11."

---

[11] The Trustee's constructive trust and equitable lien claims sound in state law. This proceeding is not one for turnover of a debt to the estate under 11 U.S.C. § 542(b), because that subsection is limited on its face to "property of the estate and that is matured, payable on demand, or payable on order." A turnover proceeding may qualify as core only when its purpose is collection rather than the creation, recognition, or liquidation of a matured debt. Porter-Hayden Co. v. First State Mgt. Grp., Inc. (In re Porter-Hayden Co.), 304 B.R. 725, 731-32 (Bankr. D. Md. 2004).

Proceedings "arise under" Title 11 "when the cause of action or substantive right claimed is created by the Bankruptcy Code." In re Southeastern Materials, 467 B.R. at 346 n.4 (citing cases); see In re Langford, Nos. 04-12447C-7, 04-83012C-7, 2007 WL 3376664, at *3 (Bankr. M.D.N.C. Nov. 2, 2007) ("Claims 'arise under' the Bankruptcy Code if the claims 'clearly invoke substantive rights created by bankruptcy law.'" (citation omitted)). The Trustee's complaint is not brought under, and his claims are not created by, the Bankruptcy Code or invoke rights created by bankruptcy law.

Nor is the Trustee's complaint an adversary proceeding "arising in" Title 11. A proceeding "arising in" Title 11 is one that is "not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." Valley Historic Ltd. P'ship v. Bank of New York, 486 F.3d 831, 835 (4th Cir. 2007) (internal quotation marks omitted). In Valley Historic, the court, in considering the bankruptcy court's jurisdiction over an adversary proceeding, held that that a breach of contract claim that pre-dated the filing of a Chapter 11 bankruptcy did not "arise within" a Title 11 case:

> It seems self-evident that a claim, like the Debtor's breach of contract claim, that pre-dates the filing of the Chapter 11 case cannot be said to have arisen within the case, and whether it caused the bankruptcy is immaterial. . . . Here, the Debtor's claims [for

18

breach of contract and tortious interference] bear only a coincidental relationship to the Debtor's bankruptcy case. They would have existed whether or not the Debtor filed bankruptcy. It follows that because the Debtor's breach of contract claim and tortious interference claim would have existence outside of the bankruptcy, they were not within the bankruptcy court's "arising in" jurisdiction.

486 F.3d at 836; see Stern, 131 S. Ct. at 2609; Thomas v. Union Carbide Agr. Prods. Co., 473 U.S. 568, 584 (1985) (noting that the Court in Northern Pipeline held that "Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review"). The same is true for state-law-based claims. See In re Southeastern Materials, 467 B.R. at 359-60 (citing Stern, 131 S. Ct. at 2611).

Here, the Trustee's claims relate solely to pre-petition contracts and pre-petition actions, including an alleged pre-petition breach of contract. The subcontract and all modifications to it were negotiated and entered into prior to the Debtor's January 2, 2010 bankruptcy petition. Similarly, all acts forming the basis of alleged liability by BBNS (breach of contract, unfair and deceptive trade practices, quantum meruit, and constructive trust) occurred pre-petition. (Doc. 4-3 (Ex. G: January 27, 2009 termination letter from BBNS to

Debtor); Doc. 4-1 ¶¶ 85, 91, 95 99, 102.)  This dispute seeks the adjudication of state-created private rights and not the restructuring of a debtor-creditor relation which is "at the core of the federal bankruptcy power."  Northern Pipeline, 458 U.S. at 71.  Moreover, BBNS has not filed a proof of claim.

Plainly, the adversary proceeding does not fall within the provisions of 28 U.S.C. § 157(b)(2), and BBNS has not shown otherwise that it is a core proceeding.  In the absence of such a showing, BBNS fails to demonstrate how Stern would affect the analysis.

### 2.  "Related to" Jurisdiction

This does not end the court's inquiry, however.  The Trustee contends that the reference should not be withdrawn because the bankruptcy court can still hear the adversary proceeding and make recommended rulings under section 157(c)(1)'s "related to" authority.[12]  The parties appear to accept that absent "related to" authority in this case, the bankruptcy court has no statutory authority to act.  See 28 U.S.C. § 157(a); M.D.N.C. LR 83.11.  The burden of showing "related to" jurisdiction is on the party asserting it: here, the Trustee.  In re Klavan, 297 B.R. 474 (Bankr. E.D. Va. 2002).

---

[12]  The determination is appropriate at this time because a non-core proceeding may be unrelated to a bankruptcy case as well as related. See In re Johnson, 960 F.2d at 399.

The Fourth Circuit, like the majority of circuits, adopts the test for "related to" jurisdiction articulated by the Third Circuit in Pacor, Inc. v. Higgins, 743 F.3d 984, 994 (3d Cir. 1984): "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[13] Valley Historic, 486 F.3d at 836 (quoting Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.), 124 F.3d 619, 625 (4th Cir. 1994) (emphasis omitted)). Thus, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and [it] in any way impacts upon the handling and administration of the bankruptcy estate." Id. (quoting Owens-Ill., 124 F.3d at 625-26).

Under this standard, it is plain that the outcome of the adversary proceeding here could alter the Debtor's rights and would impact the administration of the bankruptcy estate by bringing into it sums of money constituting damages for the Trustee's claims. See, e.g., In re Bay Vista of Va., Inc., 394 B.R. 820, 839 (Bankr. E.D. Va. 2008) (finding resolution of complaint for breach of contract claim before the court established "related to" jurisdiction); Porter-Hayden Co. v. First State Mgt. Grp., Inc. (In re Porter-Hayden Co.), 304 B.R.

---

[13] Although the Supreme Court has overturned Pacor in part, the Court has not disturbed Pacor's "related to" jurisdictional test. Valley Historic, 486 F.3d at 836 n.1.

725, 731-32 (Bankr. D. Md. 2004) (same). Thus, the court finds that the adversary proceeding is "related to" the bankruptcy case.

In sum, because the adversary proceeding is not a core proceeding but is "related to" a case under Title 11, section 157(c)(1) applies and Stern does not bar the bankruptcy court from hearing the proceeding and offering proposed findings of facts and recommended rulings.

### C. Effect of Anticipated Request for Jury Trial in Absence of a Filed Proof of Claim

BBNS's final argument is that the reference should nevertheless be withdrawn because it has not consented to the bankruptcy court's jurisdiction by filing a proof of claim in the underlying bankruptcy case and has a Seventh Amendment right to a jury trial that the bankruptcy court, as a non-Article III court, cannot conduct absent consent of the parties. (See Doc. 4-10 at 17-20, Doc. 4-11 at 3.)

It is true that a party's participation in a bankruptcy case, particularly by filing a proof of claim, may historically transform a matter ordinarily legal in nature (to which the Seventh Amendment may provide a right to a jury trial) to one equitable in nature, that is, the allowance or disallowance of a claim, for "proceedings affecting that claim." See Langenkamp v. Culp, 498 U.S. 42 (1991); see also Valley Historic, 486 F.3d

at 838 n.2.[14]  However, BBNS's concern is premature.  Even assuming it has a right to a jury trial on some or all of the claims in the Trustee's complaint,[15] withdrawal of the reference is not mandated at this time.  As the Fourth Circuit observed, the fact that the district court must undertake a jury trial in an adversary proceeding

> does not mean that the bankruptcy court immediately loses jurisdiction of the entire matter or that the district court cannot delegate to the bankruptcy court the responsibility for supervising discovery, conducting pre-trial conferences, and other matters short of the jury selection and trial.

Official Comm. of Unsecured Creditors v. Schwartzman (In re Stansbury Poplar Place, Inc.), 13 F.3d 122, 128 (4th Cir. 1993). As noted by the court in Tyler v. McLane Foodservice, Inc. (In re QSM, LLC), 453 B.R. 807 (E.D. Va. 2011), "a rule requiring immediate withdrawal of reference where a jury trial is required runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship between the district courts and bankruptcy courts."  453 B.R. at

---

[14]  The Valley Historic court noted, however, that "there still must be jurisdiction over the proceeding under 28 U.S.C. § 1334."  In the only motion pending before this court, however, BBNS does not directly challenge the jurisdiction of the bankruptcy court or of this court under Federal Rule of Civil Procedure 12(b)(1).

[15]  A breach of contract claim is one which could have been brought in a court of law in 1791 and is therefore a legal claim entitling a party to a right to a trial by jury.  See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 569-70 (1990).

Case 1:12-cv-00289-TDS  Document 5  Filed 06/18/12  Page 23 of 24

811 (internal quotation marks omitted).[16]  Thus, BBNS's right to jury trial does not mandate withdrawal of the reference to the bankruptcy court at this time.

## III. CONCLUSION

The court concludes that BBNS has failed to carry its burden of demonstrating mandatory withdrawal.  In the absence of a showing that the adversary proceeding is a core proceeding, and because it is "related to" the bankruptcy case, the bankruptcy court may exercise such authority as permitted by 28 U.S.C. § 157(c)(1) and consistent with Fourth Circuit law, subject to BBNS's right to a jury trial on any applicable claims.

IT IS THEREFORE ORDERED that BBNS's motion to withdraw reference to the United States Bankruptcy Court (Doc. 2) is hereby DENIED.


                                    /s/  Thomas D. Schroeder
                                    United States District Judge


June 18, 2012

---

[16] As noted, BBNS has not sought discretionary withdrawal, and thus its right to a jury trial as a factor under that analysis is not before the court.  See Eide v. Haas (In re H&W Motor Express Co.), 343 B.R. 208, 214 (N.D. Iowa 2006); see 9 Collier on Bankruptcy ¶ 5011.01[1][b][i] (15th ed. rev. 2003).  Even so, the presence of a jury demand is but one factor in determining whether cause for discretionary withdrawal exists.  See In re Orion Pictures, 4 F.3d at 1101-02 (citing Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.), 136 B.R. 59, 61 (S.D.N.Y. 1992)).